*E-FILED - 7/11/08*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANTHONY CLARKE, | No. C 02-4338 RMW (PR) |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| ANTHONY LAMARQUE, et al., | |
| Defendants. | (Docket Nos. 61, 65, 66, 67, 71, 72, 92, 93, 97, 99, 103, 104, 105) |

**INTRODUCTION**

Plaintiff filed this pro se civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that prison staff at Salinas Valley State Prison ("SVSP") violated his right to due process when they placed him on Management Cell Status ("MCS"), and that his placement on MCS resulted in treatment and injuries that violated his Eighth Amendment rights.[1]

Defendants move for summary judgment, alleging that there is no genuine issue of

---

1. Plaintiff is currently housed at California State Prison Lancaster in Lancaster, California.  Docket No. 101.

Order Granting Defendants' Motion for Summary Judgment
G:\Pro-Se\SJ.RMW\CR.02\Clarke338.msj.grant.md

material fact and that they are entitled to judgment as a matter of law.[2]  Defs.' Mot. for Summ. J. at 1.[3]  Plaintiff untimely filed an opposition.[4]

## BACKGROUND

Plaintiff's claims arise from an institutional search of his prison cell at SVSP on August 29, 2001, which was conducted pursuant a murder investigation.[5]  Complaint[6] ("Compl.") ¶ 14.  On that day, plaintiff "refused" to walk barefoot as instructed by officers conducting a search of his cell, and instead wore "shower slippers" to the assigned designation rather than walk on a cold and dirty floor.  Id.  When plaintiff returned to his cell he found that Sergeant Peterson had ordered Officer Goodrum to "strip-out all of the personal property . . . including clothing, bed sheets, blankets, towels, soap, toiletries, mediation [sic], legal books/papers, pens and the cell water system was cut/shut off [sic] two days."  Id. ¶ 15.  (Oddly, plaintiff deposed later that the water was shut off for only four hours.  MSJ, Decl. of Sara Ugaz, Ex. A at 27-29.)  Plaintiff alleges that "[t]he whole ordeal lasted four (4) days" – specifically until September 2 – during which time "Plaintiff and his cellmate almost froze to death in the frigid cell," resulting in physical injuries.  Id.  (Oddly, plaintiff later states that he

---

2. Defendants also contend that they are protected by the doctrine of qualified immunity. Defs.' Mot. for Summ. J. at 1.  Because the court finds that defendants are entitled to judgment as a matter of law on other grounds, the court need not reach the question of qualified immunity.

3. This document is the motion itself, distinct from its accompanying Memorandum of Points and Authorities cited elsewhere in this order.

4. Though untimely, the Court accepts plaintiff's opposition to the motion for summary judgment as filed.  Plaintiff also has filed letters alleging that he has been denied access to the prison law library.  The court addresses below the issues raised in these letters.

5. Prison staff found an inmate's corpse on August 16, 2001 in Facility A's kitchen.  MSJ, P. & A. ¶ 21.  The corpse had an eight inch skull laceration.  Id.  The next day, prison staff informed Facility A inmates that they would be on lockdown during the murder investigation.  Id. ¶¶ 22.

6. The operative complaint is the fourth amended complaint.  For convenience, the court will call the fourth amended complaint the "complaint."

Order Granting Defendants' Motion for Summary Judgment
G:\Pro-Se\SJ.RMW\CR.02\Clarke338.msj.grant.md         2

1  never asserted that the cold temperatures he was exposed to caused his physical injuries, but
2  that his lack of personal clothing was the cause. Pl.'s Opp. to Defs.' Mot. for Summ. J. at
3  11). Because of his "failure to obey direct orders," defendent Peterson ordered that plaintiff
4  be placed on MCS. Plaintiff's Memorandum in Opposition to Motion to Dismiss ("Pl.'s
5  Opp."), Ex. A at 12.[7]  Prison staff held a disciplinary hearing on September 10, 2001
6  regarding plaintiff's August 29 infraction. After the hearing, which plaintiff did not attend,
7  he was found guilty of disobeying a direct order and had to forfeit thirty days of behavioral
8  credit and received thirty days of privilege loss. Defs.' Mot. for Summ. J., P. & A. ("MSJ") ¶
9  39.

10        Property restrictions are imposed on an inmate consequent to his placement on MCS.
11 After prison staff have emptied the inmate's cell of his personal belongings, he is provided
12 with one blanket, one pillow, one pair of boxer shorts, one toothbrush, tooth powder, one
13 half-bar of soap, one face towel, a daily supply of toilet paper, and, at mealtimes only, a
14 paper cup. Id. ¶¶ 9-10. An inmate on MCS, a status that can last as long as ten days, "must
15 be interviewed daily by the Facility Lieutenant to check on the inmate's welfare and the
16 results of the interview will be documented in the housing unit log book." Id. ¶ 9, 18. MCS
17 inmates are allowed access to their legal materials and the law library, if they have a
18 "verifiable legal deadline." Id. ¶ 11.
19        In the instant action, plaintiff alleges that defendant Lamarque failed to properly
20 investigate plaintiff's claims or discipline prison staff, that plaintiff "was subjected to
21 unnecessary and wanton infliction of pain and physical injury," and that prison officials
22 retaliated against plaintiff for "exercising . . . his inmate appeal rights," constituting
23 violations of his rights to due process and to be free from cruel and unusual punishment.
24 Compl. ¶¶ 30-31. Defendants move for summary judgment on all claims.

25

26 ───────────────

27 7. This document is plaintiff's opposition to defendants' previous unsuccessful motion to
   dismiss (Docket No. 46), not an opposition to defendants' motion for summary judgment
28 (Docket No. 79).

Order Granting Defendants' Motion for Summary Judgment
G:\Pro-Se\SJ.RMW\CR.02\Clarke338.msj.grant.md       3

**DISCUSSION**

**I.      Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its' own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is not the task of the court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. Id. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex Corp v. Catrett, 477 U.S. at 323.

**II.     Plaintiff's Claims**

Plaintiff contends that (A) his placement on MCS violated his right to due process; (B) the prison staff's refusal to allow plaintiff to call witnesses at his disciplinary hearing, and the resulting loss of thirty days of time credits following the hearing, also violated his right to due process; and (C) that the conditions of confinement while on MCS amounted to cruel and unusual punishment. Pl.'s Opp. at 8, 9-10.[8]

**A.     Placement on MCS**

Plaintiff's due process claim regarding his initial placement on MCS is suitable for summary judgment because the material facts are not in dispute. The parties agree that plaintiff disobeyed a correctional officer's order to submit to a body search and to leave his cell unshod. Compl. ¶ 14; MSJ ¶¶ 27-28.

In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court held that in the prison context, deprivations authorized by state law can amount to deprivations of a procedurally protected liberty interest where (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, that is, give the inmate a kind of right to avoid it, and (2) the liberty in question is one of "real substance." See id. at 477-87. Recently, the Supreme Court clarified that the language of state statutes and regulations might play little, if any, role in the inquiry into the existence of a protected, state-created liberty interest, rather, "the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" Wilkinson v. Austin, 545 U.S. 209, 223 (2005) (quoting Sandin, 515 U.S. at 484). A deprivation of "real substance" will generally be limited to freedom from restraint that imposes "atypical and significant hardship on the inmate in relation to the

---

8. Plaintiff erroneously titles his motion (Docket No. 49) as an opposition to Defendants' "Motion for Summary Judgment." The Court will regard it as part of Plaintiff's Opposition to the Motion to Dismiss. Moreover, the Court has considered the arguments made in connection with Plaintiff's opposition to Defendants' current motion.

1 ordinary incidents of prison life," Sandin, 515 U.S. at 484, or state action that "will inevitably
2 affect the duration of [a] sentence," id. at 487.

3       Once a protected interest is established, the court must determine what process is due
4 before the interest may be taken away. See Wilkinson, 545 U.S. at 224. An essential
5 principle of due process is that a deprivation of life, liberty or property "'be preceded by
6 notice and opportunity for hearing appropriate to the nature of the case.'" Cleveland Bd. of
7 Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (citation omitted).

8       Plaintiff has failed to establish a due process violation. As an initial matter, plaintiff
9 has not shown that the liberty in question was of "real substance," especially after one
10 considers what placement on MCS entails. As a consequence of being placed on MCS,
11 prison staff confiscated plaintiff's belongings, issued him a few necessary items, and
12 interviewed him daily. While this may present an inconvenience and some discomfort, the
13 court finds no evidence in the record to support an assertion that this condition of
14 confinement in relation to the ordinary incidents and serious deprivations incident to prison
15 life – work assignments, meal times, head-counts and cell searches – constitutes such an
16 atypical or significantly severe restriction on plaintiff's liberty that his due process rights
17 have been violated. This conclusion is bolstered by the fact that plaintiff was on MCS for
18 roughly five days, specifically from August 29, 2001 to midnight on September 2, 2001,
19 making it September 3. Such a short period during which he may have experienced some
20 inconvenience and discomfort does not, on these facts, rise to the level of a constitutional
21 violation.[9] Accordingly, plaintiff's claims regarding his initial placement on MCS are
22 DISMISSED.

23
24
25     **B.**    **Disciplinary Hearing**

---

27 9. Plaintiff contends that prison staff failed to give him notice of his placement of MCS. Plaintiff states, however, that prison staff told him of his MCS placement when he returned
28 to his cell on August 29.

Order Granting Defendants' Motion for Summary Judgment
G:\Pro-Se\SJ.RMW\CR.02\Clarke338.msj.grant.md       6

Plaintiff contends that prison staff violated his right to due process because they failed to give him adequate notice of the Rules Violation Report ("RVR") hearing and thereby denied him the right to prepare a defense and call witnesses. Compl. ¶¶ 16-20. These claims are appropriate for summary judgment because most material facts are not in dispute.

According to plaintiff, prison staff scheduled an RVR hearing on September 10, 2001 regarding his actions on August 29. Pl.'s Opp., Ex. A at 12; Compl. ¶ 16. Plaintiff disputes defendants' contention that a correctional officer personally gave him a copy of the RVR. Compl. ¶ 17. Rather, the RVR "was simply thrown into Plaintiff['s] assigned cell [], while he was [not] present, which in effect denied him the right to [a] staff assistant, [an] investigative employee, to call witnesses, and [to] introduce documentary evidence at the hearing." Id. Plaintiff deposed that he received this notice on September 4, 2001, six days before his hearing, yet he called no witnesses until "[m]oments before the commencement of the (RVR) hearing," when he requested that defendants Peterson and Goodrum be called. Compl. ¶ 18-19; MSJ, Decl. of Sara Ugaz, Ex. A (Deposition of Anthony Clarke, Nov. 19, 2007) at 33, 37, 38. According to plaintiff, the conductor of the hearing, defendant Martinez, did not call these witnesses because the "staff reports gave a full picture of the incident" and because plaintiff had not indicated that he wanted to call these witnesses. Id. ¶ 20. The hearing report states, "WITNESSES: None requested." Pl.'s Opp., Ex. A at 12. Plaintiff did not attend the hearing, deposing that he refused to be handcuffed owing to pain and discomfort in his hand, and declaring the because of this objection, prison staff refused to let him attend the hearing.[10] Id.; MSJ, Ex. A. at 34, 35. At the conclusion of the hearing, defendant Martinez found sufficient evidence to support the charge of disobeying orders and deliberately obstructing staff from performing their duties, a violation of California Code of Regulations tit. 15, § 3005(b). Id.

In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court set out specific procedural requirements which must be followed at disciplinary proceedings. One of these is

---

10. Martinez entered a plea of not guilty on plaintiff's behalf. MSJ ¶ 39.

a prisoner's limited right to call witnesses. See id. at 566.

Viewing the evidence in a light favorable to the nonmoving party, the court finds that plaintiff has not met his burden to go beyond the pleadings and set forth facts showing that there is a genuine issue for trial whether a due process violation occurred. Plaintiff does not state that he never received notice or that the notice was untimely given. Rather, he contends that it was not handed to him but instead thrown into his cell. Whatever the true manner of delivery, plaintiff has not shown that the notice was inadequate or untimely.

Also, plaintiff has also not shown that the result of the hearing violated due process. First, it is undisputed that plaintiff disobeyed instructions during the cell search. Second, though apparently given adequate notice, plaintiff failed to call witnesses until the day of the hearing and, significantly, he failed to attend the hearing to argue on his own behalf. Because plaintiff, by his inaction, largely, if not entirely, contributed to any alleged failure of due process, he cannot now assign responsibility for the result to defendants. Accordingly, the court DISMISSES all claims relating to the alleged violation of his constitutional rights related to his disciplinary hearing.

### C. Conditions of Confinement

Plaintiff contends that his placement on MCS resulted in pain and injuries which violated the Eighth Amendment. More specifically, plaintiff contends that prison staff shut off the water to his cell and deprived him of blankets and other personal items, which allegedly resulted in his "almost [being] froze[n] to death" in his cell. These allegedly cold and painful conditions caused plaintiff various injuries and to contract neuritis. Compl. ¶ 32; Pl.'s Opp. at 10. Yet, in his opposition to the motion for summary judgment, plaintiff states that "he did not argue or claim that the heating and ventilation in the cell caused his injuries," but rather that his lack of personal clothing did. Pl.'s Opp. to MSJ at 11. Plaintiff states that the water was shut off for four hours on August 30, 2001 and was turned back on the next day. MSJ, Decl. of Sara Ugaz, Ex. A at 27-29. Plaintiff also states that he experienced the cold temperatures only during the four days he was on MCS. Compl. ¶ 15. Defendants

1 present evidence that they did not receive complaints from any other inmates regarding
2 ventilation problems in the cells at this time and that if the water in plaintiff's cell was shut
3 off, it was not shut off as a punishment, but rather so that an overflowing toilet elsewhere in
4 the prison could be repaired.[11]  MSJ ¶¶ 49-51.  Defendants also present evidence that many
5 months before the alleged incident plaintiff complained of pain and numbness in his left arm
6 and hand – a result of an injury that occurred before plaintiff was incarcerated – and that
7 there is no record of plaintiff complaining to the prison's medical staff about any injuries
8 owing to the coldness of his cell in August and September 2001.  Id. ¶¶ 53-60, Decl. of Sara
9 Ugaz, Ex. A at 40.

10 The Constitution does not mandate comfortable prisons, but neither does it permit
11 inhumane ones.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The treatment a prisoner
12 receives in prison and the conditions under which he is confined are subject to scrutiny under
13 the Eighth Amendment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993).  In its prohibition
14 of "cruel and unusual punishment," the Eighth Amendment places restraints on prison
15 officials, who may not, for example, use excessive force against prisoners.  See Hudson v.
16 McMillian, 503 U.S. 1, 6-7 (1992).  The Amendment also imposes duties on these officials,
17 who must provide all prisoners with the basic necessities of life such as food, clothing,
18 shelter, sanitation, medical care and personal safety.  See Farmer, 511 U.S. at 832; DeShaney
19 v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 199-200 (1989); Hoptowit v.
20 Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).  A prison official violates the Eighth Amendment
21 when two requirements are met:  (1) the deprivation alleged must be, objectively, sufficiently
22 serious, see Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)), and
23 (2) the prison official possesses a sufficiently culpable state of mind, i.e., the offending
24 conduct was wanton, id. (citing Wilson, 501 U.S. at 297).

25 In determining whether a deprivation of a basic necessity is sufficiently serious to

---

11. Plaintiff deposes that the water in the neighboring cell was also shut off during this time.  MSJ, Decl. of Sara Ugaz, Ex. A (Deposition of Anthony Clarke, Nov. 19, 2007) at 27.

1  satisfy the objective first component of an Eighth Amendment claim, a court must consider
2  the circumstances, nature, and duration of the deprivation.  The more basic the need, the
3  shorter the time it may be withheld.  See Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir.
4  2000).  Substantial deprivations of shelter, food, drinking water or sanitation for four days,
5  for example, are sufficiently serious to satisfy the objective component of an Eighth
6  Amendment claim.  See id. at 732-733; see, e.g., Hearns v. Terhune, 413 F.3d 1036, 1041-42
7  (9th Cir. 2005) (allegations of serious health hazards in disciplinary segregation yard for a
8  period of nine months, including toilets that did not work, sinks that were rusted and stagnant
9  pools of water infested with insects, and a lack of cold water even though the temperature in
10 the prison yard exceeded 100 degrees, enough to state a claim of unconstitutional prison
11 conditions); Anderson v. County of Kern, 45 F.3d 1310, 1314 (9th Cir.) ("[A] lack of
12 sanitation that is severe or prolonged can constitute an infliction of pain within the meaning
13 of the Eighth Amendment."), amended, 75 F.3d 448 (9th Cir.), cert. denied, 516 U.S. 916
14 (1995).

15     What is required to establish the second element of an unnecessary and wanton
16 infliction of pain varies according to the nature of the alleged constitutional violation.
17 Whitley v. Albers, 475 U.S. 312, 320 (1986).   In cases concerning conditions of
18 confinement, such as this one, the necessary state of mind is one of "deliberate indifference."
19 See, e.g., Farmer, 511 U.S. at 834 (inmate safety); Helling, 509 U.S. at 32-33 (inmate health);
20 Wilson, 501 U.S. at 302-03 (general conditions of confinement); Estelle v. Gamble, 429 U.S.
21 97, 104 (1976) (inmate health).  Neither negligence nor gross negligence will constitute
22 deliberate indifference.  See Farmer, 511 U.S. at 835-36 & n.4; see also Estelle, 429 U.S. at
23 106 (establishing that deliberate indifference requires more than negligence).  A prison
24 official cannot be held liable under the Eighth Amendment for denying an inmate humane
25 conditions of confinement unless the standard for criminal recklessness is met, i.e., the
26 official knows of and disregards an excessive risk to inmate health or safety.  See Farmer,
27 511 U.S. at 837.  The official must both be aware of facts from which the inference could be
28

1 drawn that a substantial risk of serious harm exists, and he must also draw the inference.  See
2 id.  An Eighth Amendment claimant need not show, however, that a prison official acted or
3 failed to act believing that harm actually would befall an inmate; it is enough that the official
4 acted or failed to act despite his knowledge of a substantial risk of serious harm.  See id. at
5 842; see also Robins v. Meecham, 60 F.3d 1436, 1439-40 (9th Cir. 1995) (bystander-inmate
6 injured when guards allegedly used excessive force on another inmate need not show that
7 guards intended to harm bystander-inmate).

8      Plaintiff has not established the objective Farmer element that the alleged deprivation
9 was sufficiently serious, and consequently has not shown any Eighth Amendment violation.
10 Assuming, arguendo, that prison staff did turn off the water flow to his cell, this alleged
11 deprivation lasted for four hours.  While, if true, this may have presented a displeasing
12 inconvenience and some discomfort, the court cannot say that such an occurrence was
13 sufficiently serious as to violate plaintiff's rights under the Eighth Amendment.  This
14 becomes especially clear if one looks at a case such as Hearns, cited above.  In Hearns, the
15 plaintiff's cell conditions did rise to the level of a constitutional violation because plaintiff
16 had experienced nine months of filthy and highly unhealthy plumbing conditions and a
17 flooded cell.  Plaintiff's stated cell conditions, if true, were perhaps uncomfortable and may
18 have allegedly caused some pain, simply do not rise to the level of a constitutional violation.
19

20      Also, plaintiff has not established a sufficiently serious deprivation regarding the
21 alleged suffering he experienced in his cell because of the cold temperatures.  The parties
22 agree that prison staff confiscated plaintiff's personal belongings from his cell – including
23 the warming comforts of his blankets – incident to his placement on MCS.  Defendants,
24 however, assert, and plaintiff does not dispute, that all inmates on MCS are provided with
25 essential materials, including a blanket and a pillow.  Defendants have submitted evidence
26 that the prison does not have air conditioning because Salinas Valley's "moderate" climate
27 makes having it unnecessary, which challenges plaintiff's assertion that cold air had been
28

1  blowing on him for some time. MSJ ¶ 46; Decl. of Sara Ugaz, Ex. A at 31. Defendants also
2  provide evidence that the temperatures in the cells are similar to the temperatures outside.
3  MSJ ¶ 46. Defendants present evidence that daytime temperatures in Salinas Valley during
4  August and September 2001 were sixty-nine to seventy-six degrees Fahrenheit, while nightly
5  temperatures were in the fifties. Id. ¶¶ 47-48.
6       Reading the record in the light most favorable to plaintiff, the court finds that he has
7  not established a constitutional violation under Farmer. Although being deprived of his
8  personal items was perhaps an inconvenience and caused some discomfort, plaintiff has not
9  shown that experiencing four days of cold temperatures resulted in a sufficiently serious
10 deprivation, especially when one considers that prison staff did provide a blanket to plaintiff.
11 Furthermore, because the court finds that plaintiff has not shown that unconstitutional acts of
12 occurred, he has not shown that any alleged injury he suffered resulted from the alleged
13 deprivation. Accordingly, plaintiff's Eighth Amendment claims are DISMISSED.

## CONCLUSION

15      The court concludes that defendants are entitled to judgment as a matter of law as to
16 all claims. Accordingly, defendants' motion for summary judgment (Docket no. 79) is
17 GRANTED. All claims and the complaint are hereby DISMISSED.
18      Plaintiff's discovery motions (Docket Nos. 65, 67, 97) are hereby DENIED AS
19 MOOT. Defendants' motion to stay discovery (Docket No. 93) is likewise DENIED AS
20 MOOT. Plaintiff's request that the court order the arrest of some named defendants (Docket
21 No. 61) is DENIED AS MOOT. Plaintiff has asked the court (Docket Nos. 71) to order
22 prison staff at his current facility to allow plaintiff more time in the prison law library.
23 Plaintiff's basis for the request is not before the court in this action. Plaintiff must first
24 submit this claim to the prison administrative grievance forum. Plaintiff is free to file a new
25 complaint regarding these allegations after he has exhausted the administrative process
26 available to him. This motion is DENIED.
27      In a letter and a declaration (Docket Nos. 66, 72), plaintiff states that he his not
28

allowed meaningful access to the courts and that he was physically prevented from talking to witnesses at his current facility regarding his case. As to the first contention, plaintiff does not specify how he is allegedly being denied access to the courts. Plaintiff's basis for the request is not before the court in this action. Plaintiff must first submit this claim to the prison administrative grievance forum. Plaintiff is free to file a new complaint regarding these allegations after he has exhausted the administrative process available to him. Furthermore, because the events at issue in this action took place at Salinas Valley State Prison, witnesses would not be available at his current facility in Lancaster. This motion is DENIED. Also, plaintiff's request that the court locate an unserved defendant (Docket No. 92) is DENIED AS MOOT.

In another letter (Docket No. 99), plaintiff contends that the prison's mental health staff have labelled him insane in order to punish him for filing the instant action. Plaintiff's basis for the request is not before the court in this action. Plaintiff must first submit this claim to the prison administrative grievance forum. Plaintiff is free to file a new complaint regarding these allegations after he has exhausted the administrative process available to him. This motion is DENIED.

Plaintiff's motions for judicial notice and for an extension of time (Docket Nos. 103 & 104) are DENIED AS MOOT. Defendants' omnibus motion in opposition to plaintiff's untimely opposition to the motion for summary judgment (Docket No. 105) is also DENIED AS MOOT.

The clerk shall terminate all pending motions and close the file.

**IT IS SO ORDERED.**

DATED: 7/7/08

RONALD M. WHYTE
United States District Judge